LINDA S. TOUZIN vs. MARY J. SMITH, executrix, & others.

Middlesex. April 13, 1978. — October 30, 1978.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Civil*, Amendment, Death of party, Service of process. *Executor and Administrator*, Limitation of actions, Service of process. *Motor Vehicle*, Registrar as statutory agent.

The statute of limitations provided in G. L. c. 197, § 9, did not preclude the amendment of an action to add the executrix of a will as a defendant more than one year after the executrix's appointment where the action had been commenced against two other defendants before the expiration of one year. [644–645]

Notification under G. L. c. 197, § 9, is not required in an action arising out of an automobile accident brought against the registrant of an automobile or his executor or administrator where service of process is made on the registrar of motor vehicles pursuant to c. 90, § 3D. [645]

Where an executrix had already been appointed when an action against her decedent was commenced and was subsequently made a party to the action by the allowance of an amendment to the action, the writ originally naming the decedent and notification to the decedent's address as appearing in the records of the registry of motor vehicles were sufficient to satisfy the requirements of G. L. c. 90, § 3D. [645–647]

Even though process and notice of an action for injuries arising out of an automobile accident were in compliance with the provisions of G. L. c. 90, § 3D, and an executrix had the opportunity to defend on the merits, where the executrix's plea in abatement was sustained on the basis of c. 197, § 9, she was to be given an opportunity to defend against the application of § 3D by showing prejudice arising out of her possible distribution of assets before she had notice that service had been made under § 3D. [647–648]

TORT. Writ in the Superior Court dated February 12, 1971.

A plea in abatement was heard by *Good, J.,* and the action was tried before *J. P. Sullivan, J.*

*Nicholas Macaronis (George P. Jeffreys & Steven H. Bowen* with him) for the plaintiff.

*Edward R. Wine* for Mary J. Smith, executrix.

GOODMAN, J. This action of tort for injuries arising out of an automobile accident was commenced by writ dated February 12, 1971, naming three defendants. One of them, a corporation owning the taxicab in which the plaintiff Linda S. Touzin was riding when injured, was served at its last and usual place of business. To effect service on the other two, the driver of the taxicab and Steven L. Smith (Smith), the driver of an automobile which collided with the taxicab, the plaintiff proceeded under G. L. c. 90, § 3D, as amended through St. 1956, c. 75, which provides for service of process on the registrar "by leaving duplicate copies thereof . . . in the hands of the registrar, or in his office."[1] This was done on February 16, 1971, and the registrar on March 4, 1971, sent "one

---

[1] General Laws c. 90, § 3D, as so amended, provides in pertinent part: "Application for registration of a motor vehicle . . . or for a license to operate motor vehicles shall constitute and irrevocably appoint, in case the certificate of registration or license applied for is issued, the registrar or his successor in office the true and lawful attorney of the applicant, upon whom may be served all lawful processes in any action or proceeding against him, or his executor or administrator, growing out of any accident or collision in which he . . . may be involved while operating a motor vehicle within the commonwealth during the period covered by the certificate of registration or by the license as the case may be, and any process against him which is so served shall, if he is notified of such service as hereinafter provided, be of the same legal force and validity as if served on him personally and the mailing by the registrar of a copy of such process to him at his last address as appearing on the registrar's records shall be sufficient *notice to him of such service. Service of such process shall be made by leaving duplicate copies thereof . . . in the hands of the registrar, or in his office, and the registrar shall forthwith send one of said copies by mail, postage prepaid, addressed to the defendant at his last address as appearing on the registrar's records . . . .* The court in which the action is pending may order such continuances as may be necessary to afford the defendant reasonable opportunity to defend the action."

of said copies by mail, postage prepaid, addressed to the defendant [Smith] at his last address as appearing on the registrar's records." G. L. c. 90, § 3D. The duplicate copy sent to Smith's address was returned by the post office on March 8, 1971, marked "addressee unknown." No question is raised as to service on the other two defendants, both of whom filed answers.

The accident occurred on February 21, 1969 (the plaintiff was a minor until May 2, 1970), and on October 24, 1969, Smith died. Mary J. Smith, his widow, was appointed executrix of his will (executrix); her bond was approved on February 18, 1970. The plaintiff's counsel did not discover the fact of Smith's death until August of 1972 and thereupon moved to add the executrix as a party and for process to issue against her. The motion was allowed on October 25, 1972, process issued, and the executrix was served in hand on October 31, 1972. The executrix appeared specially and filed a plea in abatement founded on G. L. c. 197, § 9, as appearing in St. 1954, c. 552, § 1.[2] The plea was sustained on July 2, 1973, and the plaintiff filed a bill of exceptions. On November 27, 1973, a substitute bill of exceptions was allowed, and the plaintiff filed an order for the preparation of the papers. Judgment was entered on October 22, 1976,[3] for the ex-

---

[2] The statute applicable to this case provided in pertinent part: "[A]n executor or administrator shall not be held to answer to an action by a creditor of the deceased which is not commenced within one year from the time of his giving bond for the performance of his trust, or to such an action which is commenced within said year unless before the expiration thereof the writ in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate . . . . The probate court may allow creditors further time for bringing actions, not exceeding two years from the time of the giving of his official bond by such executor or administrator, provided that application for such further time be made before the expiration of one year from the time of the approval of the bond."

[3] The case lay dormant until June 11, 1976, when it was restored to the jury trial list on motion of the taxicab company. After a pretrial

ecutrix on the basis of the prior ruling on the plea in abatement, and the plaintiff appealed.

As the plaintiff points out, the broad powers of amendment characteristic of our practice permit the addition of a defendant which relates back to the commencement of an action, timely brought against other defendants, although an independent action against that defendant would have been barred by a statute of limitations. *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 88–89 (1967). See *Rafferty* v. *Sancta Maria Hospital*, 5 Mass. App. Ct. 624, 627–629 (1977). This settled law has application to G. L. c. 197, § 9 (see note 2, *supra*) as well as to the limitations generally provided in G. L. c. 260. "Nothing in the section [§ 9] works any change in th[at] settled law . . . ." *Henshaw* v. *Brown*, 299 Mass. 136, 138 (1937). The case of *Chandler* v. *Dunlop*, 311 Mass. 1, 9 (1942), is distinguishable, as the court indicates, from cases "where an action had previously been commenced against somebody." In the *Chandler* case the court held that no action had been commenced against anyone since the writ named a sole defendant who was dead. There was therefore no action to which the administratrix in that case could have been made a party. It seems significant to us that the Supreme Judicial Court in its analysis stated: "Finally, no action was ever commenced against any other defendant." *Chandler* v. *Dunlop*, 311 Mass. at 8.

In our case, an action "for the cause for which it was intended to be brought" (G. L. c. 231, § 51 [as in effect prior to St. 1973, c. 1114, § 169], § 138 [as in effect prior

hearing (Mass.R.Civ.P. 16, 365 Mass. 762 [1974]), the judge ordered that the case be tried against all the defendants; he refused to order judgment prior to trial as to the executrix separately on the plea in abatement. See Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). The executrix objected and refused to participate in the trial. The jury answered special questions pursuant to Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974), that Smith was negligent, that the plaintiff's damages were $25,000, and that the other two defendants were not negligent.

to St. 1973, c. 1114, § 207]; cf. *Ideal Financing Assn.* v. *McPhail*, 320 Mass. 521, 524 [1946]) had been commenced against two other parties more than six months after the executrix's appointment (see G. L. c. 197, § 1, as in effect prior to St. 1969, c. 493, § 1) and before the expiration of a year. The amendment was thus properly allowed and made the executrix a party as of the commencement of the action on February 12, 1971; the defense of the one year statute of limitations then provided in § 9 was therefore negatived.

The executrix points further to the provisions of § 9 that even where an action is commenced within the period of limitations, the plaintiff cannot prevail "unless before the expiration thereof the writ in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating . . . has been filed in the proper registry of probate." See note 2. *supra,* These provisions require either notice filed in the appropriate registry before the expiration of the statutory period of limitations or such service ("by delivery in hand" or acceptance) as will give notice to the executrix. See *Marshall* v. *Mulrenin,* 508 F.2d 39, 42 n.3 (1st Cir. 1974); *Parker* v. *Rich,* 297 Mass. 111, 113 (1937). However, such notification under § 9 does not seem to us to be mandated in an action arising out of an automobile accident brought against the registrant of an automobile or the holder of a license to drive (hereinafter motorist) or his executor or administrator where service of process is made on the registrar of motor vehicles pursuant to G. L. c. 90, § 3D (see note 1, *supra*). We look to that statute and the circumstances of this case to discern the service and notice requirements and whether they have been complied with.

In this case, as we have held, the amendment had transformed this action nunc pro tunc into an action against the executrix who could be served with process by service on the registrar as provided in St. 1953, c. 366, § 3, amending § 3D so as to cover the case of a motorist who

has not survived the accident or service of process on the registrar. See *Toczko* v. *Armentano*, 341 Mass. 474, 478 (1960). The questions which remain are whether the fact that the writ served on the registrar names Smith rather than the executrix and whether the fact that the registrar mailed the writ to Smith's address are in compliance with the service and notice provisions of § 3D.

It is significant that the amendment to G. L. c. 90, § 3D, St. 1953, c. 366, § 3, made the registrar the attorney for service on the executor or administrator as well as on the motorist but made no other substantial change in that section. The only process mentioned in § 3D, as so amended, is "process against him" (the motorist). By contrast, St. 1953, c. 366, §§ 1 and 2, amending §§ 3A and 3B respectively, refer specifically to "process against him, or his executor or administrator." Further, G. L. c. 90, § 3D, provides notification "by mail . . . addressed to the defendant at his last address as appearing on the registrar's records." The original purpose of § 3D was obviously to relieve plaintiffs of the burden of searching for a motorist beyond the address disclosed by the records of the registry, and the amendment to make the registrar the agent for service on the executor or administrator furthers that purpose. The statute obviates the burden commonly resting upon the plaintiff in such cases to ascertain the fact of death. See *Jackson* v. *Arooth*, 359 Mass. 721, 723 (1971). In accordance with that purpose, service on and notification to the motorist in accordance with the records of the registry is intended to be sufficient service on and notification to the executor or administrator, for the records will obviously not include the name and address of the executor or administrator. A requirement that the executor or administrator be named in the writ or be notified would derogate from the remedial purpose of the 1953 amendment of § 3D.

Accordingly, we hold that, in the circumstances of this case, the writ naming the decedent and notification to the decedent's address as appearing on the registry's records

were sufficient to satisfy § 3D. Here, the executrix had already been appointed when the action was commenced and was a party to the action by virtue of the allowance of the amendment, which established that the action was intended to be the same action as that brought against the decedent. *Johnson* v. *Carroll*, 272 Mass. 134, 136 (1930). We note that in these circumstances the statute is consistent with such cases as *Henshaw* v. *Brown*, 299 Mass. at 139, and *Lester* v. *Lester*, 8 Gray 437 (1857), which hold that a misnomer in the writ is not a substantive defect. Contrast *Brooks* v. *Boston & No. St. Ry.*, 211 Mass. 277, 279 (1912), in which a writ was dated after the death of the plaintiff and before the appointment of an executor or administrator; *Bateman* v. *Wood*, 297 Mass. 483, 486–487 (1937), in which a writ named a sole deceased defendant (see *Chandler* v. *Dunlop*, 311 Mass. 1, 8–9 [1942]) and was not served upon the representative of the deceased.

Though the process and notice were in compliance with the provisions of G. L. c. 90, § 3D, it was, nevertheless, necessary that the notice give a reasonable opportunity to defend. Such a requirement was read into G. L. c. 90, § 3C(1), by *White* v. *Hultgren*, 357 Mass. 36, 39–40 (1970), and was imposed in *Hardy* v. *Utica Mut. Ins. Co.*, 369 Mass. 696, 700 (1976), a case involving § 3D, in which the registrar did not send the notification to a defendant for about a month, and it was not established when, if ever, he received the notification. The court held that the delay in mailing did not vitiate the effectiveness of the process so long as the defendant had been given an opportunity to defend against the action. In our case it is clear that the executrix did have an opportunity to defend on the merits (see note 3, *supra*). However, since the plea in abatement was decided on the basis of G. L. c. 197, § 9, rather than G. L. c. 90, § 3D, it would appear that she had no opportunity to defend against the application of § 3D on the ground that she, as executrix, may have distributed assets of the estate before having notice that service

had been made under § 3D and may thus have been preju-
diced by the $25,000 special verdict (see note 3, *supra*). See
*Joseph S. Waterman & Sons* v. *Soliday*, 231 Mass. 422
(1918).

The result we reach harmonizes the policy in G. L. c. 90,
§ 3D, in favor of facilitating service in actions by plain-
tiffs involved in automobile accidents with the policy in
favor of the expeditious settlement of estates. Our hold-
ing comports with the policy of G. L. c. 197, § 10, which
grants relief from the provisions of § 9 where a plaintiff
is not charged with culpable neglect, such relief not to
affect any payment or distribution made before an action
for such relief is filed. Further, in the circumstances,
these policies are also in harmony with the policy of the
liberal amendment practice, the purpose of which is to
assure that once a plaintiff has brought an action, his
expectations should not be defeated by a failure to in-
clude all the defendants.

Accordingly, the judgment in favor of the executrix is
reversed, and the case is remanded to the Superior Court
Department, where the executrix is to be given an oppor-
tunity to show prejudice arising out of her possible distri-
bution of assets before she had notice that service had
been made under § 3D. In this connection, we note that
the record indicates that the liability is covered, at least
in part, by insurance.[4] To the extent that it is so covered,
the executrix will not be prejudiced in any event, and
judgment will, if prejudice is otherwise shown, be entered
on the special verdict up to the amount of the insurance
coverage.[5] Compare G. L. c. 197, § 9A. Note also *Sorensen*
v. *Sorensen*, 369 Mass. 350, 352–353 (1975).

---

[4] The insurer of Smith's automobile was notified of the accident at
least as early as May 21, 1971, after the case was entered in the
Superior Court on April 5, 1971. On September 10, 1971, counsel
purporting to act for Smith, appeared generally and filed an answer
on behalf of Smith, the plaintiff having assented to the late filing.

[5] The trial judge could properly exercise his authority under
Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), to submit the case to the jury
against all the defendants. The order allowing the plea in abatement·

In sum, judgment is to be entered for the plaintiff against the executrix on the special verdict as it may be reduced by her showing of prejudice through lack of notice but in an amount not less than so much of the special verdict as is covered by insurance.

*So ordered.*

prior to the new rules remained in the Superior Court although a bill of exceptions had been allowed; it could not be entered in the Supreme Judicial Court until the whole case had been heard. See Mottla, Civil Practice § 1158 (3d ed. 1962); *Farris* v. *St. Paul's Baptist Church*, 216 Mass. 570, 571 (1914); *Riley* v. *Burns*, 304 Mass. 15, 16–18 (1939); G. L. c. 231, § 96, as in effect prior to St. 1973, c. 1114, § 193. When the new rules came into effect the interlocutory character of the order made it subject to Rule 54(b) and the other Rules of Civil Procedure. Mass. R.Civ.P. 1A pars. 2, 3, 7 & 10, 365 Mass. 731–733 (1974). See *Rollins Environmental Serv., Inc.* v. *Superior Court*, 368 Mass. 174, 178–179 (1975). Such an interlocutory order does not "terminate the action as to any of the claims or parties, and the order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Mass.R.Civ.P. 54(b).