**Florine MULLINS, Executrix of the Estate of William H.L. Mullins, deceased, Plaintiff,**

v.

**Robert GARTHWAIT, Sr. Executor of the Estate of George F. Enhorning, deceased, Defendant.**

**Civ. A. No. 92–12847–NG.**

United States District Court, D. Massachusetts.

Nov. 17, 1994.

Terry Philip Segal, Scott P. Lopez, Boston, MA, Brendan V. Sullivan, Jr., Stephen D. Raber, Williams & Connolly, Washington, DC, for plaintiff.

Brandt R. Madsen, O'Connell & Yanno, P.C., Boston, MA, Anthony J. Kwiatkowski, Law Office of John Scott Hoff, P.C., Chicago, IL, John O'Connell, O'Connell & Yanno, P.C., Boston, MA, John Scott Hoff, Law Office of John Scott Hoff, P.C., Chicago, IL, for defendant.

## MEMORANDUM AND DECISION

GERTNER, District Judge.

This is a diversity action stemming from a plane accident in which both passenger and pilot were killed. The executrix of the passenger's estate, Florine Mullins (hereinafter "Mullins"), suing on behalf of the estate of her husband, William H.L. Mullins, brings this wrongful death action against the executor of the pilot's estate, Robert Garthwait (hereinafter "Garthwait"), defending on behalf of the estate of George F. Enhorning. Since the executrix failed to file the lawsuit within the short one year statute of limitations established by M.G.L. ch. 197 § 9 for actions against a decedent's estate, she seeks a declaration that the remedial statute of limitations, M.G.L. ch. 197 § 10, applies. Section 10 establishes a three year statute of limitations from decedent's death and further, permits the plaintiff to levy against the assets of the estate to satisfy the claim, if certain conditions are met. The defendant seeks a declaration that § 10 does not apply, but § 9A does. Section 9A also establishes a three year statute of limitations for wrongful death and personal injury claims but limits recovery to the proceeds of any insurance policy.

**Defendant's motion for summary judgment is DENIED,** plaintiff's motion for summary judgment is hereby GRANTED.

## I. SUMMARY OF THE FACTS

· On September 29, 1990, Mr. George F. Enhorning invited Brig. Gen. William H.L. Mullins (ret.) to ride as a passenger in a P–51D Mustang airplane owned by Mr. Enhorning. The plane took off from Chatham Municipal Airport in Chatham, Massachusetts with Mr. Enhorning as pilot, but crashed while making its landing approach. Both Mr. Enhorning and Brig. Gen. Mullins were killed. An investigation was conducted by the National Transportation Safety Board ("NTSB"). Its report, issued on December 2, 1991 stated:

> Pilot Enhorning was initiating the turn for approach to the runway when, as sighted by witnesses, the airplane appeared to roll and struck the ground before completing the roll.

On October 16, 1990 the plaintiff, executrix of the estate of William Mullins retained Attorney Fred Alexander ("Alexander") of McGuire, Woods, Battle & Boothe, a Virginia law firm, to represent her in a number of

matters relating to her husband's death, including a wrongful death action stemming from the crash. Alexander informed Mullins that they would need to wait for the NTSB report before filing suit. Alexander waited too long; he failed to file suit in Massachusetts against Mr. Enhorning's estate within the applicable short statute of limitations. In June 1992, Mullins fired Alexander and retained Attorney Steven Raber of Williams & Connolly (a Washington, D.C. law firm).

It was available to Raber to file suit against Enhorning's estate in Connecticut [1] which had a statute of limitations of two years from death for claims against the decedent's estate. Raber had four months, until September 29, 1992 to do so. Raber, like Alexander, missed the deadline.

On November 30, 1992, the plaintiff filed a complaint for wrongful death against the defendant, more than two years after the death of Enhorning, the pilot. On January 19, 1993, Garthwait, the executor, disallowed the claim on the ground that it was time barred. On March 8, 1993, Garthwait relented in part, informing the plaintiff that the Mullins' wrongful death claim was tenable, but that under M.G.L. ch. 197 § 9A, it was limited to the proceeds from Enhorning's insurance policy, namely $100,000.00. Thereafter, on July 28, 1993, Mullins amended the complaint adding two additional counts. Count II sought a declaration that § 9A (which would restrict the claim to the proceeds of an insurance policy) did not apply to this cause of action. Count III sought a declaration that, even if § 9A applied, plaintiff was also entitled to relief under § 10, which would mean that the claim could be satisfied by levying against the general assets of the Enhorning estate.

Plaintiff filed a motion for summary judgment as to both Counts II and III of the Amended Complaint. The Court (Harrington, J.) entered an order on January 27, 1994, denying the motion as to Count II, but deferring a ruling as to Count III pending further discovery. After the completion of discovery, plaintiff moved for reconsideration of its motion for summary judgment on Count III; likewise, defendant seeks summary judgment on the same count.

## II. PROCEDURAL STANDARD

A motion for summary judgment will be granted when the all the relevant pleadings, viewed in a light most favorable to the non-moving party, present no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir.1992); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

## III. STATUTORY FRAMEWORK

Massachusetts General Law chapter 197 § 9 [2] (the "short statute of limitations") passed in 1788, established that all creditors of a decedent's estate, regardless of the statute of limitations of the underlying action, file claims within one year of the decedent's death.

The following section, chapter 197 § 9A,[3] (enacted in 1972) is obviously a remedial

---

1. This Court has jurisdiction pursuant to diversity of citizenship, 28 U.S.C. § 1332. Mullins is a resident of the Commonwealth of Virginia; Garthwait is a resident of the State of Connecticut. The amount in controversy far exceeds $50,000.00.

2. In pertinent part, § 9 states as follows:
 Except as provided in this chapter, an executor or administrator shall not be held to answer an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased and unless, before the expiration of such period, the process in such action has been served by delivery in hand upon such executor or admin-

istrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim, and the court in which the action has been brought has been filed in the proper registry of probate.

3. Section 9A provides:
 Notwithstanding the provisions of section nine, an action for personal injuries or death, if commenced more than one year after the date of death of the deceased, may be brought against said executor or administrator, provided that such action is commenced within three years next after the cause of action accrues, and provided further that any judgment recov-

section which provides relief for certain personal injury or wrongful death plaintiffs who failed to file their claim against the estate within the short statute of limitations. Recovery is limited in two respects: First, the plaintiff must file suit within three years of the date upon which the cause of action accrued; second, recovery is limited to the proceeds of "a policy of insurance or bond, if any, and not the general assets of the estate."

Chapter 197 § 10[4] (enacted in 1861) also provides relief for those claimants who failed to file suit within the one year statute of limitations enunciated in § 9, but is not limited to personal injury or wrongful death claimants. Although this provision, unlike § 9A, allows recovery against the assets of the estate, it has other limitations. It requires that plaintiffs seeking relief from the short statute of limitations to make a showing that: a) justice and equity require it; and b) that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited.

> ered in any action so brought may be satisfied only from the proceeds of a policy of insurance or bond if any, and not from the general assets of the estate.

4. Section 10 provides:
 > If the supreme judicial court, upon a bill in equity filed by a creditor whose claim has not been prosecuted within the time limited by section nine, deems that justice and equity require it and that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited, it may give him judgment for the amount of his claim against the estate of the deceased person, provided forthwith upon the filing of the bill a notice such as provided in section nine has been filed in the proper registry of probate; but such judgment shall not affect any payment or distribution made before the filing of such bill and notice.

5. To be sure, the defendant's argument on this score is a bit murky. At times, he seems to be suggesting that the federal court abstain because no state court has specifically ruled on the application of § 10. That this is a case of first impression for this Court, or the state court, hardly justifies abstention. *See, e.g., Fragoso v. Lopez,* 991 F.2d 878, 883 (1st Cir.1993); *Bergeron v. Estate of Loeb,* 777 F.2d 792, 800 (1st Cir.1985), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986) ("[D]ifficult or unresolved questions of state law ... without more, do [ ] not warrant abstention where plaintiff has prop-

## IV. SUBJECT MATTER JURISDICTION

 Garthwait challenges this Court's subject matter jurisdiction claiming the plaintiff failed to satisfy several prerequisites for the application of § 10: Mullins failed to file a "bill" in the Supreme Judicial Court and failed to bring an action "sounding in equity." I disagree.[5]

With respect to the defendant's first contention, as a federal district court sitting in diversity, a state statute dealing with such formal matters as the appropriate level state court in which to file the action, or the form of the action, cannot defeat federal jurisdiction. *See, Monogram Indus., Inc. v. Zellen,* 467 F.Supp. 122, 123 (D.Mass 1979) (state statute conferring exclusive jurisdiction on state probate court over an estate, cannot defeat federal jurisdiction over actions to establish claims against the estate). Despite the fact that this claim was not originally filed in the Supreme Judicial Court, failure to abide by these procedural requirements will not deprive this Court of jurisdiction.[6]

> erly invoked the diversity jurisdiction of the federal district court.")

6. Perhaps the best precedent is the most venerable. In *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) the Court further articulated the doctrine of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) by fashioning an outcome determinative test to evaluate whether a federal court sitting in diversity should follow state law. Where the statute at issue would completely "bar recovery" if the claim were brought in state court, or where the statute so "intimately affect[s] recovery or non recovery" a federal court sitting in diversity should follow state law. 326 U.S. at 109, 65 S.Ct. at 1470. In contrast, in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) a state law governing the manner in which process was served and which conflicted with Rule 4(d)(1) Fed.R.Civ.Pro. would not bind the federal court. In *Hanna,* the Court found that the "outcome determinative" test of *Guaranty* had to be read with reference to the twin aims of the case law—to discourage forum shopping and to avoid the inequitable administration of the law. 380 US. at 468, 85 S.Ct. at 1142. The choice between the Massachusetts statute, requiring in-hand service on an executor or administrator and Rule 4's service by leaving copies of the summons and complaint at the defendant's home with someone "of suitable age and discretion" would have "scant rele-

The defendant's argument that § 10, even if it applies, requires a "bill in equity" and that a complaint for declaratory relief does not qualify, is equally without merit. First, it is difficult to understand the nature of the defendant's concern. To the extent that he is arguing that the Mullins claim is not equitable because there are adequate remedies at law, the statute addresses those concerns. Its express purpose is to provide equitable relief, permitting a claim against an estate when the court "deems that justice and equity require it and that such creditor is not chargeable with culpable neglect." (*See* section VI *infra.*) To the extent that he is arguing that this claim was not presented in the correct form, i.e., a "bill in equity," these requirements, like the requirements of filing in the Supreme Judicial Court, have no relevance to this federal diversity action.

■ Finally, to the extent that he is arguing that the claims in Count III are not appropriately brought as claims for declaratory relief under 28 U.S.C. § 2201 (the "Declaratory Judgment Act") the argument is insubstantial. Actions brought pursuant to 28 U.S.C. § 2201 allow the federal courts to adjudicate claims "so long as the case retains the essentials of an adversary proceeding, involving a real, not a hypothetical, controversy." *Nashville, C. & St. L. Ry. v. Wallace,* 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933). *See El Dia Inc. v. Hernandez Colon,* 963 F.2d 488, 493–494 (1st Cir.1992); *In re Worksite Inspection,* 592 F.2d 611, 616 (1st Cir.1979) ("declaratory judgment is a remedy committed to judicial discretion") (quoting *A.L. Mechling v. U.S.,* 368 U.S. 324, 331, 82 S.Ct. 337, 342, 7 L.Ed.2d 317 (1961)).

■ Here, the plaintiff seeks a declaration that chapter 197 § 10 is applicable to her suit against the decedent's estate. I am satisfied that an actual case or controversy exists between the parties and the use of the declaratory judgment is not merely an attempt to use creative pleading in an end run around Article III. *See, Wellesley Hills Realty Trust v. Mobil Oil Corp.,* 747 F.Supp. 93, 102

(D.Mass.1990); *State of Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 692 (1st Cir.1994); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (upholding the constitutionality of the Declaratory Judgment Act).

## V. THE APPLICATION OF § 9A AND § 10.

Garthwait argues that the availability of specific relief for personal injury and wrongful death actions covered by insurance under § 9A forecloses any additional recovery under § 10. Section 9, he maintains, announces the general rule, barring recovery unless claims are filed within one year of death, to which the legislature made two exceptions: Section 9A, he claims, carves out personal injury and wrongful death actions where there is insurance. Section 10 is the residual category, dealing with all other claims that meet certain equitable standards. In contrast, Mullins argues that recovery under § 9A and § 10 are not mutually exclusive. Section 10 establishes one exception, and § 9A another. If a claimant can qualify under both, he can proceed under both.

■ Which framework is correct depends on an analysis of the language of the statutes, the policies they reflect, and the case law. Since absolutely nothing on the face of the provisions suggest that §§ 9A and 10 are mutually exclusive, Mullins points to elementary principles of statutory construction which suggest that the legislature is presumed to have meant what it said. *See Spaulding v. McConnell,* 307 Mass. 144, 149, 29 N.E.2d 713 (1940) ("The legislature are presumed to understand and intend all consequences of their own measures; and the only safe course is for courts of justice to expand the intentions of the legislature by their acts, and those acts construed by known and established rules of construction.") The position is persuasive. Section 9 was enacted first, in 1788, apparently to expedite the settlement of estates. Section 10 was enacted in 1861, plainly to relieve the

---

vance" in the choice of forum, nor would it bar recovery.

The same may be said of state provisions requiring that a claim be filed in the Supreme

Judicial Court, or that it be in the form of a "bill" in equity.

harshness of the short statute of limitations where equity and the interests of justice required. *See, Downey v. Union Trust Co.,* 312 Mass. 405, 409, 45 N.E.2d 373 (1942). While § 9A was enacted in 1972 when the other two sections were extant, the drafters did not indicate that it would supplant recovery under § 10.[7]

Defendant attaches significance to the fact that § 10 refers specifically to § 9; it applies only when "a creditor['s] claim has not been prosecuted within the time limited by section nine . . ." The fact that § 10, the exception, refers back to § 9, the general rule, makes sense. Likewise, the fact that § 9A refers back to the general rule, § 9 makes sense. The fact that neither section dealing with exceptions to the general short statute of limitations refers to the other supports the plaintiff's position. If the two were mutually exclusive, the legislature would have said so.[8]

Garthwait points to an alternative principle of statutory construction equally elementary: Where the legislature has included a section by explicit reference, it implicitly forecloses recovery under other more general sections. *Brady v. Brady,* 380 Mass. 480, 484, 404 N.E.2d 75 (1980). Since § 9A covers a certain specific category of cases, wrongful death and personal injury cases involving insurance, previously covered by § 10, Garthwait argues, the legislature must have meant to carve them out of recovery under § 10.

■ The argument is overstated. The general maxim of statutory construction cited by defendant is a guide to be applied where its application would not frustrate the general purposes of the statute. Fair construction requires putting the more specific section in the context of the statutory scheme as a whole. *See Brady v. Brady, supra* at 484, 404 N.E.2d 75; *Massachusetts Trustees of Eastern Gas and Fuel Associates v. United States,* 312 F.2d 214 (1st Cir.1963).

The regime pre–1972 involved the short statute of limitations (§ 9) and the limited equitable, interest of justice exception (§ 10). In the 1970's, obviously in recognition of the wide availability of insurance, the proceeds of which would pass outside of the decedent's estate, the legislature amended the statute to make certain that there was no impediment to the immediate distribution of insurance proceeds to a claimant filing later than one year but before three years from date of death.

There is no policy reason for suggesting that insurance recovery supplants other recovery where the claimant also meets the requirements of § 10.[9] If a wrongful death or personal injury claimant claiming under an insurance policy *also* meets the equitable requirements of § 10, he would be no different than the ordinary plaintiff, able to recover under an insurance policy, as well as able to move against the decedent's estate. In such a case, all the legislature's concerns—the concern for equity and the concern for the speedy disposition of the estate will have been met. To the extent that recovery comes from an insurance policy, the orderly administration of the estate will not be dis-

---

7. The case of *Downey v. Union Trust Co.,* 312 Mass. 405, 409, 45 N.E.2d 373 (1942), decided at the time § 9A was added, described the interplay between § 9 and § 10. The *Downey* court described § 10 as applicable to plaintiffs who "show[] a claim of such substantial merit that equity and justice require that its validity should be recognized and unless he proves that his failure to commence action within the time prescribed was not due to his carelessness or to any lack of diligence for which he might properly be censured or blamed."

8. The word "only" in § 9A referring to the fact that recovery under that section is "only" limited to insurance proceeds and not the assets of the estate, does not make §§ 9A and 10 mutually exclusive. If a claimant can claim under an insurance policy, and not upset the administra-

tion of the estate, the provision allows him or her to do so. If he or she has not *also* qualified under § 10's equitable requirements, the claimant may not go further and disrupt the expeditious administration of estates. As noted above, as to those claimants who meet the equitable requirements of § 10, in addition to the requirements of § 9, the legislature has made a judgment that the interest of justice outweigh the concern for expedition in the administration of estates.

9. To be sure, as part of a determination under § 10 of whether the equity requires that the claim be allowed to proceed against the estate, a court should consider the adequacy of any other recovery, including insurance proceeds. *See, e.g., Leach v. Leach,* 238 Mass. 100, 130 N.E. 262 (1921).

turbed. To the extent that recovery comes from the general assets of the estate, the legislature had already determined that in cases covered by § 10 the interest of justice outweighed the concerns for expedited administration of estates.[10]

The case law is, to say the least, sparse.[11] Although no court has expressly addressed the issues here, the descriptions of the statutory scheme in *dicta* lend credence to the plaintiff's position. In *Touzin v. Smith*, 6 Mass.App. 641, 381 N.E.2d 1313 (1978) the court allowed the plaintiff to amend her complaint to include the executrix of the decedent's estate, under § 10. In doing so the court stated, "[Our] holding comports with the policy of G.L. c. 197 § 10, which grants relief from the provisions of § 9, where a plaintiff is not charged with culpable neglect ..." Id. at 647, 381 N.E.2d 1313. At the same time, the court recognized that the defendant's "liability is covered, at least in part, by insurance." Id. at 647, 381 N.E.2d 1313. The court obviously did not conclude that the availability of limited relief from insurance proceeds (the § 9A relief) foreclosed recovery under § 10. *Touzin*, it should be noted, decided in 1978, was one of the few decisions which addressed the issue when all three statutory provisions existed in substantially the same form as they are today.[12]

Where the highest court, the Supreme Judicial Court, has not spoken on the question of whether § 9A recovery extinguishes a claim under § 10, where the language of the provisions, the policies underlying them and intimations in the case law suggest otherwise, I conclude that the provisions of both § 9A and § 10 apply to this action.

## VI. APPLICATION OF § 10

■ In order to recover under § 10, the plaintiff must demonstrate: (a) that "justice and equity require it" and; (b) "that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited." Based upon the facts, the Court holds that Mullins has met her obligation.

### A. The "Justice and Equity" Requirement.

Garthwait argues that equity does not require the application of § 10 because Mullins has adequate remedies at law. First, Garthwait argues, Mullins is entitled to "100% of the insurance proceeds," which he claims will be adequate to fully compensate plaintiff. The record, granting the benefit of all inferences to Garthwait, does not support that conclusion.[13]

---

10. Garthwait's claims do not ring true in another sense. He was aware of the potential Mullins' claim from the date of Garthwait's appointment as executor. It was, after all, the same crash that killed Enhorning that gave rise to Mullins' claim. The estate which Garthwait represents is not substantially harmed by the application of § 10 to Mullins' claim, permitting Mullins to file a claim, which Garthwait knew from the outset would be brought.

11. And, legislative history is non-existent.

12. In *Hastoupis v. Gargas*, 9 Mass.App.Ct. 27, 398 N.E.2d 745 (1980), the court held that a relative of a decedent was entitled to equitable relief under § 10 for oral promises made to the plaintiff by the decedent. In describing the statutory scheme, the court did not mention the restriction on the availability of § 10 recovery by the presence of § 9A. I hesitate to glean any great significance from this omission. As the defendant noted, the claim was not based on personal injury or wrongful death; there was no reason to discuss the application of § 9A.

13. I am obviously not putting a precise value on the plaintiff's claim. For the purposes of evaluating the application of § 10, my role is to determine if insurance recovery of $100,000 is likely to be inadequate as a matter of law to compensate the plaintiff for her loss, and thus trigger equitable relief under § 10. The defendant has offered no proof that it is adequate; he has offered only the conclusory allegation that it is. Likewise, the plaintiff has not presented any facts on this issue. Under Rule 56(c), if neither party has offered facts to contest an allegation in the complaint, I can rely on it. In the complaint, Gen. Mullins' widow seeks the "fair monetary value of General Mullins to the persons entitled to receive the damages recovered, including but not limited to, the loss of reasonably expected net income, services, protection, care, assistance, society, consortium, companionship, comfort, guidance, counsel and advice of General Mullins to the persons entitled to the damages recovered; reasonable funeral and burial expenses of Gen. Mullins; and Gen. Mullins conscious suffering before his death."

Garthwait also contends that the existence of potential legal malpractice claims against both plaintiff's former lawyer (Alexander) and current lawyer (Raber) constitute adequate remedies at law. In support of this argument, Garthwait urges the Court to accept the proposition that "where one neglects to resort to another remedy available to him sufficient to protect his rights, he is not entitled to maintain a bill under § 10." Defendant's Memorandum in Opposition at p. 12.[14]

The defendant's argument is flawed. Although relief under § 10 can be characterized as "equitable," since the remedy is available "when justice and equity require," nothing in the case law suggests the application of traditional equity analysis. For the most part, the remedy at law which plaintiffs seeking relief under § 10 must account for, is the failure to qualify for relief under § 9. Unlike conventional equitable remedies, where the party seeking the aid of equity must illustrate the general inadequacy of the remedies at law (*Tejidos de Coamo Inc. v. International Ladies' Garment Workers' Union*, 22 F.3d 8, 13 n. 9 (1st Cir.1994)), the cases suggest that "equitable" relief under ch. 197 § 10 is triggered by a showing that the plaintiff is not guilty of culpable neglect in prosecuting her claim under § 9. *Downey, supra*, 312 Mass. at 409, 45 N.E.2d 373.

■ To the extent that § 10 addresses remedies at law beyond those available under § 9, it focuses on remedies at law *between the parties* (in this case, between the creditor and the executor).[15] Garthwait's general claim that potential malpractice suits against Mullins' attorneys constitutes adequate remedies at law is not sufficient. The very nature of relief afforded by § 10 contemplates the existence of potential malpractice suits against the plaintiff's attorney.[16] If I accept the defendant's position, then every creditor who hired a lawyer, but failed to timely prosecute his claim under § 9, would arguably have an adequate remedy at law in the form of a malpractice suit. If that were the case, relief under § 10 would be largely foreclosed.[17] See, *Hastoupis v. Gargas, supra*, 9 Mass.App.Ct. at 32, 398 N.E.2d 745 (holding that plaintiff who consulted an experienced attorney who failed to timely file the claim was nevertheless entitled to relief under § 10); *Downey, supra*, 312 Mass. at 408, 45 N.E.2d 373 (providing relief under § 10 despite the fact that the plaintiff consulted *two* attorneys who failed to prosecute her claim under § 9 in a timely fashion).[18]

14. In support of this contention, the defendant cites *Monaghan v. Monaghan*, 323 Mass. 96, 79 N.E.2d 900 (1948). This is somewhat confusing as that case denied relief to a plaintiff who chose to pursue another cause of action despite the fact that he knew that the short statute of limitations was running against him. The Supreme Judicial Court's decision in *Monaghan* was correctly limited to the plaintiff who, for strategic reasons, chose not to pursue his claim under § 9. *See also, Leach v. Leach, infra.*

15. *See*, e.g., *Leach v. Leach*, 238 Mass. 100, 130 N.E. 262 (1921).

16. Defendant Garthwait must have been aware of this position when in his memorandum he pointed to the fact that "the Court could almost take judicial notice that one of the most fundamental means of committing legal malpractice is to fail to file an action within the applicable statute of limitations." Defendant's Memorandum in Response at p. 14.

17. As noted in B, *infra*, there is considerable overlap between a malpractice action and an action under § 10. A lawyer can be vulnerable

in malpractice because he misunderstood the law and yet, his client's § 10 remedy would still be available, because the conduct did not qualify as "culpable neglect." *See, Hastoupis,* 9 Mass.App. Ct. at 33, 398 N.E.2d 745. The only way Mullins *could* recover against her former counsel would be if § 10 remedies were not available, i.e., if the behavior were in the category of "mere procrastination in callous disregard of professional ... responsibilities." *Hastoupis* at 33, 398 N.E.2d 745.

18. Garthwait contends that Mullins had a viable claim against Enhorning's estate in the state of Connecticut. Specifically, the defendant argues that Raber's failure to bring suit in Connecticut where it would have been timely even given Raber's late entry into the case amounted to a breach of duty that Raber owed his client Mullins (and therefore, a potential legal malpractice claim). The result of this, the defendant argues, is the existence of an adequate remedy at law. For the reasons articulated above, the availability of legal malpractice suits—whether based upon a a missed statute of limitations, or the failure to seek relief in another forum—do not, by themselves, foreclose recovery under § 10.

## B. *The "Culpable Neglect" Standard:*

Garthwait offers three explanations for the conclusion that Mullins was guilty of culpable neglect in not prosecuting her wrongful death suit within the short statute of limitations. He cites to: (a) Mullins' decision to solely pursue a claim against Mr. Enhorning's insurance policy; (b) Mullins' reliance on her attorneys' advice regarding the applicable legal remedies; and (c) Mullins' own actions (enumerated below).

Mullins' decision to seek relief against the proceeds of Enhorning's insurance policy "now appears inadequate for her present intentions ... [and] she should not now be entitled to the relief granted in § 10." Defendant's Opposition at p. 23. The basis for this position so the defendant believes, is *Leach v. Leach*, 238 Mass. 100, 130 N.E. 262 (1921). In *Leach*, the Supreme Judicial Court denied relief to an estate creditor who missed the short statute of limitations. The court determined that a plaintiff who deliberately chooses to pursue an alternative remedy, cannot seek the aid of equity under § 10 once the statute of limitations has run on the alternative claim. *Id.* at 104, 130 N.E. 262.

*Leach* is distinguishable. In *Leach*, the plaintiff "immediately engaged counsel in Pittsburgh ... [and then] brought suit on her claim against the ... estate ... in Pennsylvania." Only after receiving a judgment in the Pennsylvania action and "collect[ing] a substantial sum on it," did Leach pursue a bill in Massachusetts. *Id.* at 100, 130 N.E. 262. Under the circumstances, it is not surprising that the court concluded that the interests of justice did not apply to Leach's claim. In fact, *Leach* can more appropriately be viewed as standing for the proposition that a plaintiff, who spends time litigating in another forum and receives "a substantial sum" will be refused relief under § 10. *See also, Monaghan v. Monaghan, supra.* In effect, under those circumstances, equity will not permit a second bite at the apple.[19]

Here, the facts indicate that Mullins did not fully invest in one course and then, as an afterthought, seek relief under § 10. She consulted with Attorney Alexander for the purposes of handling "all my legal affairs." Transcript of Plaintiff's Deposition at p. 3. Her consultations with, and retention of Mr. Alexander encompassed a host of legal matters. Mullins' Affidavit at ¶ 2. Further, she relied on the advice given her by Mr. Alexander regarding all the appropriate steps to take in pursuing her legal remedies. Mullins' Affidavit at ¶ 23.

■ Defendant emphasizes a single handwritten note that plaintiff wrote to Attorney Alexander on June 21, 1992, in which she informs her then counsel that she retained Williams & Connolly to "bring suit against the Enhorning's insurance company." That statement, defendant argues, somehow indicates that Mullins had invested in a claim for insurance proceeds and like the plaintiff in *Leach*, should not be permitted to also litigate under § 10. Even if the note can be so characterized, it hardly equals the situation in *Leach*. At best, plaintiff was considering all options available to her under § 9A and § 10, which she was permitted to do. She did not commit to one course, waste judicial resources and time, gain an adequate recovery, and then, at the eleventh hour, change tactics.[20]

Garthwait also argues that Mullins was guilty of culpable neglect by relying on the flawed advice of her attorneys. In this respect, I see no material difference between the plaintiff's position here and the plaintiffs

---

19. The court in *Leach* said:

> The plaintiff knew seasonably of the decease of her debtor and of domiciliary administration upon his estate. Seemingly she deliberately decided, having regard to what was supposed to be her own advantage to forego action in this commonwealth and to seek relief in that jurisdiction where the larger part of the estate of her debtor appeared to be, and has thus let the statute of limitations run against her claim in this commonwealth.

*Id.*, 238 Mass. at 105, 130 N.E. 262. There was no allegation of accident or mistake. There was no deceit.

20. In any case, plaintiff can hardly be held to the literal language of her handwritten note. The language represents a lay-person's effort to apprise her lawyer of the retention of new counsel. It was not her "unambiguous expression ... to pursue the insurance company." Defendant's Opposition at p. 22. Within months of that letter the instant action was brought.

in both *Downey* and *Hastoupis supra.* In both, plaintiffs reasonably relied on the advice of counsel. Although the *Downey* court affirmed a master's finding that the plaintiff was not guilty of culpable neglect, the decision lacked any discussion regarding why the attorney's behavior was excusable. The Court assumes that the master believed that the attorney's failure was due to "inadvertence, misunderstanding, illness or some cause other than neglect or breach of duty." 312 Mass. at 409, 45 N.E.2d 373. The plaintiff was excused because she consulted an experienced and respected member of the bar, apprised him of all the facts relative to her claim against the estate, and he advised her that he would do "whatever was necessary to protect her rights." 312 Mass. at 408, 45 N.E.2d 373. In *Hastoupis,* the plaintiff also engaged an "experienced member of the bar" to represent him in his claim against his uncle's estate, but the lawyer failed to file suit within the short statute of limitations due to illness. *Hastoupis, supra,* 9 Mass. App.Ct. at 31, 398 N.E.2d 745.

Purporting to quote from the decision, Garthwait claims the *Hastoupis* rule is that the *sole* exception to the imputation of the attorney's mistakes to the client is if the lawyer's mistake was due to " ' . . . illness . . . or some cause other than neglect or breach of duty.' " Defendant's Opposition at p. 24 (quoting *Hastoupis* at 33, 398 N.E.2d 745) (emphasis added). The defendant's citation is grossly misleading. The entire standard enunciated by the *Hastoupis* court reads:

> If the attorney's failure was due to *inadvertence, misunderstanding, illness or some cause other than neglect or breach of duty, that misstep is not culpable under the statute,* nor attributable to the creditor client. The statute leaves to the judge some leeway to pardon those errors which arise from a misunderstanding of the controlling law as distinguished from mere procrastination in callous disregard of professional responsibilities.

*Id.* (emphasis added). The complete text of the court's analysis reveals a wider range of excusable attorney conduct than the defendant would have this Court believe.[21]

■ That standard is broad enough to include the conduct of both Attorneys Alexander and Raber. The accident which caused the death of both Enhorning and Mullins took place in Massachusetts. Enhorning was a domiciliary of Connecticut and General Mullins of Virginia. Alexander's failure to bring suit within the short statute of limitations seems precisely the kind of "misunderstanding of the controlling law" as contemplated by the Court of Appeals in *Hastoupis.* Likewise, Raber's failure to pursue a claim in Connecticut within four months of his entry in the case, can be characterized as "inadvertence."

Finally, apart from the actions of her counsel, the defendant recites numerous examples of plaintiff's conduct which amount to culpable neglect. Specifically, the defendant argues that Mullins: (1) waited too long to switch attorneys; (2) failed to closely manage her case by checking with her attorneys; (3) never instructed her attorneys to file suit on her behalf; (4) never contacted a qualified attorney to represent her; (5) failed to seek alternate remedies available to her; (6) unjustifiably waited for the NTSB report before prosecuting her claim; and (7) chose to pursue a claim against Enhorning's insurance carrier.

■ Arguments 1–6 above challenge whether Mullins' reliance on her lawyer to protect her rights and timely prosecute her claim was reasonable. Defendant points to Mullins' deposition in which she stated "I was with them [Alexander] from October 16th, 1990 until I went to Williams & Connolly in June '992, and nothing was happening. Alexander wasn't doing anything." Transcript of Plaintiff's Deposition at p. 6. In essence, defendant suggests that this proves Mullins failed to check on the status of the

---

**21.** While the first sentence suggests that lawyer behavior which comprises malpractice should not qualify for relief under § 10 (i.e., "some cause other than neglect or breach of duty") the second sentence quoted suggests that there is overlap. The Court can "pardon" errors arising from "misunderstandings of the controlling law" not amounting to "mere procrastination" or "callous disregard of professional responsibilities," which errors might also have been the subject of a malpractice action.

litigation, or be vigilant about her lawyer's efforts.

The Court's analysis of the deposition and the supporting affidavit reveals a different situation. When questioned about the context of Mr. Alexander's representation, Mullins stated that "occasionally, I would call him (Alexander)"; "Mr. Alexander always told me we were waiting for the accident report before anything could be done"; and "I was told by Fred Alexander that we could not file any kind of lawsuit until we had the accident report (the NTSB report), because we didn't know what the cause of the accident was." In the supporting affidavit she states "I relied on Mr. Alexander's advice and felt comfortable leaving these matters in his hands." Mullins' Affidavit at ¶ 2.

Perhaps most illustrative is the response to the inquiry regarding whether Mullins ever instructed Mr. Alexander to file suit:

Q: Did you ever instruct Mr. Alexander to file a lawsuit on your behalf?

A: Me, personally, instruct him?

Q: Yes.

A: No, I was waiting for him to instruct me.

Transcript of Plaintiff's Deposition at p. 6.

With respect to the claim that the plaintiff's failure to contact a qualified attorney, the defendant argues that Mullins "never bothered to find out whether Alexander was an experienced litigator." In addition, defendant argues that Mullins' failure to hire a Massachusetts attorney even after firing Mr. Alexander constituted "egregious" and "culpable conduct." Nothing in the record suggests that Mullins did anything less than a consumer of legal services would have done in her situation—seek recommendations of counsel from a friend, and follow counsel's advice. Nothing in the record suggests that she should have been put on notice of Alexander's deficiencies until after the fact. Nor was there any reason why Mullins should have questioned the legitimacy of the advice proffered by successor counsel, Raber. Consultations with apparently experienced lawyers as these lawyers were,[22] who repeatedly assured their client that her rights are being protected, plainly satisfy the requirements of § 10. *See, Hastoupis, supra* at 32, 398 N.E.2d 745.[23]

Next, the defendant argues that Mullins unjustifiably waited for the NTSB report before prosecuting her claim. In her affidavit, Mullins stated:

He advised me that it would be best to wait until the NTSB Report was published before filing a lawsuit because the Report would likely contain valuable information about the causes of the accident and who was at fault.

Mullins' Affidavit at p. 2. To the extent that Mullins' delay in filing suit until receipt of the NTSB report was the result of the advice she received from her lawyer, under the circumstances of this case, it cannot form the basis of a finding of culpable neglect.[24]

## V. CONCLUSION

The availability of relief under M.G.L. ch. 197 § 9A does not foreclose recovery under § 10 of the same chapter. The plaintiff's failure to bring suit for wrongful death within the short statute of limitations will be forgiven where justice and equity so require

22. Had Mullins checked she would have found that the Martindale Hubbel Legal Directory ranks both Alexander and Raber as "very high to preeminent" in the category of Legal Ability, and "very high" in the general recommendation category.

23. Garthwait also contends that Mullins is a "sophisticated plaintiff" who took "zero responsibility in looking after her affairs." In support of this allegation, the defendant states "Mrs. Mullins is the wife of an Air Force General; she has been exposed to elite society while her husband worked as an influential lobbyist for a powerful aircraft manufacturer ... she is personal friends with the former administrator of the FAA, Air Force test pilots and dignitaries." The Court fails to see how any of these allegations would establish that Mullins unjustifiably relied on the advice of a competent attorney. Even people with elite friends are entitled to rely on apparently experienced attorneys.

24. Garthwait also reiterates his claim that Mullins "refuses to avail herself of alternative legal remedies," this time as evidence of culpable neglect. As the Court determined above, potential suits against third parties do not, in themselves, amount to adequate legal relief within the meaning of § 10.

and the plaintiff is not guilty of culpable neglect in prosecuting the claim prior to the expiration of one year. Here, Mullins' reliance on her attorneys' advice regarding the filing of suit in Massachusetts within the short statute of limitations was excusable within the meaning of the statute.

Therefore, the Court **GRANTS** Plaintiff's Motion for Summary Judgment with respect to the applicability of § 10.

**SO ORDERED.**