KATHERINE GATES & another[1] vs. JOSEPH REILLY, executor,[2] & others.[3]

Suffolk. December 1, 2008. - March 24, 2009.

Present: MARSHALL, C.J., IRELAND, COWIN, CORDY, & BOTSFORD, JJ.

*Executor and Administrator,* Claims against estate. *Limitations, Statute of. Res Judicata. Supreme Judicial Court,* Appeal from order of single justice. *Jurisdiction,* Equitable.

Principles of res judicata did not bar a bill in equity filed in the county court, where no final judgment had been entered on claims dismissed in a prior Superior Court action, and where the parties had not requested entry of such judgment. [464-465]

Discussion of the standard of review of a single justice's decision on a bill in equity under G. L. c. 197, § 10. [465-466]

Discussion of the statutory framework for actions by a creditor of a deceased person against the deceased's executor or administrator. [466-467]

A single justice, acting on a bill in equity filed in the county court pursuant to G. L. c. 197, § 10, did not err in ordering the reinstatement of certain of the plaintiffs' claims against their deceased aunt's estate that had been dismissed in the Superior Court as untimely filed under G. L. c. 197, § 9, where the plaintiffs' claims, which were based on alleged promises made by the deceased on which the plaintiffs claimed to have relied, were sufficiently grounded in law and fact to be deemed meritorious, and the deceased's executors had not shown prejudice arising from the filing of the claims thirty-three days after the expiration of the applicable statute of limitations [467-468]; and where the plaintiffs, who were not themselves guilty of culpable neglect in failing to file suit within the period of the statute of limitations, were not chargeable for their attorneys' neglect in failing to do so [468-473].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 15, 2006.

The case was heard by *Spina,* J.

*Frank P. Muzio* for the defendants.

---

[1]Elizabeth Russell.

[2]Of the estate of K. Mildred Dooling, also known as Mildred K. Dooling.

[3]James Georges, executor of the estate of K. Mildred Dooling, also known as Mildred K. Dooling; and Patrick Curtin, trustee of M.D. Realty Trust.

*Andrew R. Berman* (*David H. Abbott* with him) for the plaintiffs.

CORDY, J. On September 15, 2006, Katherine Gates and Elizabeth Russell filed a bill in equity in the county court pursuant to G. L. c. 197, § 10 (§ 10), and G. L. c. 214, § 8, seeking, among other things, the reinstatement of certain claims against the estate of their aunt, Mildred K. Dooling, that had been dismissed in the Superior Court as untimely filed under G. L. c. 197, § 9 (§ 9). A single justice of this court ordered that the plaintiffs' claims be reinstated. The defendants appealed from the single justice's decision to the full court. We affirm.

1. *Background and procedural history.* Mildred K. Dooling died testate on May 12, 2003. At the time of her death, Dooling owned the Devereux School (school), located at 44 Smith Street in Marblehead, and a substantial interest in the property at 44 Smith Street. M.D. Realty Trust owned the remaining interest in that property. The school and Dooling's interest in the real property at 44 Smith Street were assets subject to the probate of her estate. Dooling never married and had no issue. She was survived by eight nephews and nieces, including the plaintiffs Gates and Russell, and the defendant executors Joseph Reilly and James Georges.

Gates and Russell worked at the school for many years, first as teachers, and eventually came to be responsible for all aspects of the school's operations except bookkeeping and financial affairs. Gates and Russell allege that they justifiably relied on Dooling's repeated promise that in exchange for their services at the school (for which they were compensated far below market rates), Gates and Russell would become the sole owners of the school and the property at 44 Smith Street on their aunt's death. They also allege that they were unaware of Dooling's transfer of a portion of the real estate at 44 Smith Street to the M.D. Realty Trust during her lifetime.

a. *Probate of the will.* On June 24, 2003, Reilly and Georges (named in the will as executors) filed a petition for the probate of Dooling's will with the Essex Division of the Probate and Family Court Department seeking the allowance of the will and their appointment as coexecutors. The will left Dooling's estate (including the school and her interest in the real property at 44

Smith Street) to her eight nieces and nephews in equal shares. On August 26, 2003, Gates and Russell (acting pro se) filed challenges to the will in the Probate and Family Court, claiming that the will was the product of duress and undue influence. When the executors filed a motion to strike the challenges, Gates and Russell hired the firm of Straub & Lyons, LLP (Straub & Lyons), who filed a response on their behalf.[4] While Gates and Russell's objection to the will was pending in the Probate and Family Court (and within one year of Dooling's death), their attorney filed a number of pleadings and documents that put Reilly and Georges on notice that Gates and Russell were claiming to be creditors of the estate in an amount of $1,800,003.42. On May 26, 2004, a judge allowed Reilly and Georges's motion to strike Gates and Russell's challenge to the will. The will was allowed in the Probate and Family Court on June 7, 2004.

b. *Superior Court action.* On June 14, 2004 (thirteen months after Dooling's death), Gates and Russell, still represented by Straub & Lyons, filed a verified complaint in the Superior Court against Reilly and Georges as executors of Dooling's estate. They again claimed to be creditors of Dooling's estate and sought monetary damages based on Dooling's alleged promise to leave them the school and all of the related real estate in her will. The verified complaint included eleven counts. On July 16, 2004, Gates and Russell filed an amended verified complaint to add Patrick Curtin, trustee of M.D. Realty Trust, as a defendant, as well as to add three additional counts, now totaling fourteen.[5]

On August 31, 2004, the defendants moved to dismiss the

---

[4]The record indicates that Gates and Russell hired Neila J. Straub of the law firm of Straub & Lyons, LLP, and that Melissa M. Tzanoudakis of that firm entered an appearance in the Probate and Family Court for Gates and Russell. At least one other attorney from the firm, Mark B. Lyons, submitted filings in the Probate and Family Court on behalf of Gates and Russell.

[5]The fourteen counts were as follows: (1) breach of contract (Gates); (2) breach of contract (Russell); (3) unjust enrichment (Gates); (4) unjust enrichment (Russell); (5) services rendered (Gates); (6) services rendered (Russell); (7) deceit (Gates); (8) deceit (Russell); (9) deceit (equitable interest) (Gates and Russell); (10) unjust enrichment (equitable interest) (Gates and Russell); (11) promissory estoppel (equitable interest) (Gates and Russell); (12) constructive trust for fraud and deceit (Gates and Russell); (13) constructive trust for breach of fiduciary duty (Gates and Russell); (14) injunctive relief (Gates and Russell).

amended verified complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), on the grounds that the action was not commenced within one year of Dooling's death as required by G. L. c. 197, § 9 (*a*), in "an action by a creditor." On June 7, 2005, a Superior Court judge allowed in part and denied in part the defendants' motion. While dismissing the claims for breach of contract, unjust enrichment, services rendered, deceit, and constructive trust, the judge let stand the plaintiffs' claims seeking an equitable interest in the school property and injunctive relief.[6]

Thus, counts nine, ten, eleven, and fourteen remain pending in the Superior Court. In counts nine, ten, and eleven, the plaintiffs seek specific performance (i.e., transfer to Gates and Russell of title and interest in the school and 44 Smith Street), or restitution payable to Gates and Russell if specific performance is unavailable. The school and Dooling's interest in the real estate at 44

---

[6]The judge reasoned that the term "creditor" as construed by Massachusetts courts includes persons with contract and tort claims against the estate. Further, the term "action" applies to proceedings in law and equity. The judge noted, quoting *New England Trust Co.* v. *Spaulding*, 310 Mass. 424, 430 (1941), however, that the "statute does not apply to suits to enforce equitable interests in property of a decedent in the possession of an executor, as such a suit is not one by a creditor to collect a debt but one by the holder of an equity to enforce his title." Accordingly, the judge dismissed counts one through eight because they sounded in tort and contract. The judge declined to dismiss counts nine, ten, and eleven because they each sought relief in the form of an "equitable interest in property." Count fourteen, which sought injunctive relief pending adjudication of the claims, was not dismissed. Finally, the judge dismissed counts twelve and thirteen (constructive trust claims) on the authority of *Geldurt* v. *Usher*, 248 Mass. 323, 326 (1924), which she concluded made such claims subject to the one-year statute of limitations in G. L. c. 197, § 9 (§ 9).

The judge rejected the defendants' argument that the Statute of Frauds mandated dismissal of counts nine, ten, and eleven because Dooling's alleged promise of the transfer of land was oral. The judge reasoned that the plaintiffs may come within an exception to the Statute of Frauds because they may be able to prove that they changed their positions in reliance on Dooling's promise, that they were put into possession of the land by performing most of the administrative and ministerial functions at the school, and that they furnished part of the consideration by performing services at below minimum wage. See *Hickey* v. *Green*, 14 Mass. App. Ct. 671, 673-674 (1982), citing *Fisher* v. *MacDonald*, 332 Mass. 727, 729 (1955). If the plaintiffs come within this exception, the judge reasoned, they will be entitled to specific performance. See *Hickey* v. *Green, supra*. Through the remedy of specific performance, the plaintiffs would be seeking to enforce an "equitable interest in property," which would make the statute of limitations in § 9 inapplicable.

Smith Street remain in the estate as a consequence of a preliminary injunction ordered by a Superior Court judge on August 9, 2004, enjoining the estate from selling, transferring, encumbering, or otherwise disposing of the school, its assets, or the real estate at 44 Smith Street.

c. *County court bill in equity.* Gates and Russell hired new counsel in May, 2006, who filed his appearance in the Superior Court case on May 10, 2006. Although the Superior Court judge dismissed the claims that are now before us on June 7, 2005, it was not until September 15, 2006, fifteen months later and four months after the appearance of new counsel, that a bill in equity was filed in the county court. On October 2, 2007, based on the documents, affidavits, and pleadings filed in the case, a single justice issued a memorandum of decision and judgment with the following findings of fact and conclusions of law: (1) Gates and Russell's attorney filed a notice of creditor's claim well within the one-year statute of limitations, but did not file the corresponding civil action until one year and thirty-three days after the death of Dooling; (2) the delay of thirty-three days was due solely to former counsel's neglect; (3) the neglect may not be attributable to the plaintiffs under principles of agency; (4) the plaintiffs' claims are meritorious; (5) justice and equity require that the plaintiffs be allowed to pursue those claims; and (6) the defendants have shown no prejudice from the delay.[7] The single justice ordered that the plaintiffs' claims be reinstated in the Superior Court.

2. *Discussion.* Before we review the single justice's determination that Gates and Russell are entitled to relief under § 10, we address a preliminary argument raised by the defendants.

a. *Res judicata.* The defendants argue that the claims dismissed in the Superior Court (i.e., counts one through eight, twelve, and thirteen) are res judicata and cannot be reasserted via § 10. We disagree. Neither issue preclusion nor claim preclu-

---

[7]The defendants argue that the single justice committed reversible error by not ordering an evidentiary hearing or appointing a commissioner or special master. See G. L. c. 211, § 4A (giving single justice authority to transfer case to lower court for partial disposition); S.J.C. Rule 2:13, as appearing in 382 Mass. 749 (1981) (providing for designation of special masters and commissioners). Before the single justice, the defendants did not, however, request either an evidentiary hearing or the appointment of a special master.

sion bars the present bill in equity. A requirement of each is the entry of final judgment on the merits, see *Kobrin* v. *Board of Registration in Med.,* 444 Mass. 837, 843 (2005), and *Tuper* v. *North Adams Ambulance Serv., Inc.,* 428 Mass. 132, 134 (1998), and no final judgment has been entered on the dismissed claims under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), nor did the parties request entry of such judgment.

b. *Standard of review.* A bill in equity filed in this court under § 10 must be filed in the county court to be "heard and determined" in the first instance by a single justice. See G. L. c. 214, § 8.[8] An appeal from the decision of a single justice under § 10 may be taken to the full court. See Mass. R. A. P. 1 (b), as amended, 421 Mass. 1601 (1995) ("All proceedings related to any appeal from . . . a decision of a single Justice of the Supreme Judicial Court . . . shall be had only before the full Supreme Judicial Court . . .").

Our cases have not clearly described the proper standard of review of a single justice's decision on a bill in equity under § 10. All parties cite to and rely on the standard of review applicable to G. L. c. 211, § 3, proceedings. See, e.g., *Milton* v. *Boston,* 427 Mass. 1016, 1017 (1998), quoting *Greco* v. *Suffolk Div. of the Probate & Family Court Dep't,* 418 Mass. 153, 156 (1994) ("this court will not reverse an order of a single justice in the absence of an abuse of discretion or clear error of law"). That standard is not appropriate here.

In appeals from a single justice's decision on a bill in equity, this court has stated that it will not reverse a finding of fact based on oral testimony unless "plainly wrong."[9] See, e.g., *Hayes* v. *Penn Mut. Life Ins. Co.,* 222 Mass. 382, 386 (1916), quoting *Colbert* v. *Moore,* 185 Mass. 227, 228 (1904) ("upon an appeal from a decree of a judge in equity upon questions of fact, arising on oral testimony heard before him, his decision will not be reversed unless it is plainly wrong"). However,

---

[8] General Laws c. 214, § 8, provides: "Civil actions in which equitable relief is sought and motions and other applications therein, whether interlocutory or final, shall in the first instance be heard and determined by one justice of the court."

[9] The "plainly wrong" standard is the same as the "clearly erroneous" standard. *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 161 (1977).

insofar as there was no evidentiary hearing before the single justice in this case, and no findings of fact based on oral testimony, the court may draw its own inferences from the documentary evidence. See, e.g., *Hutchins* v. *Mead*, 220 Mass. 348, 348-349 (1915) ("In reviewing the facts, this court stands where the single justice stood" when reviewing decree of single justice on bill in equity where no oral testimony heard).

When reviewing a decision by a single justice on a bill in equity under § 10, this court has reviewed questions of law de novo, albeit without explicitly stating so. See, e.g., *Tamulevich* v. *Robie*, 426 Mass. 712 (1998) (reviewed question of law de novo without stating standard); *Haven* v. *Smith*, 250 Mass. 546 (1925) (same). See also *Eaton* v. *Eaton*, 233 Mass. 351, 364-366, 369-376 (1919) (standard not stated but question of law reviewed de novo after decision by single justice on bill in equity not brought under § 10).

In summary, in a bill in equity proceeding heard in the first instance by a single justice, we review without deference factual findings made solely on documentary evidence, and review de novo questions of law.

c. *Statutory framework.* General Laws c. 197, § 9 (*a*), sets forth a one-year statute of limitations for an "action by a creditor of the deceased" against the deceased's executor or administrator.[10] "The purpose of the statute is to expedite the settlement of estates." *New England Trust Co.* v. *Spaulding*, 310 Mass. 424, 429 (1941), and cases cited. Section 10, however, allows a creditor who has failed to comply with § 9's one-year statute of limitations to file a bill in equity seeking "judgment for the amount of his claim against the estate of the deceased

---

[10]General Laws c. 197, § 9 (*a*), provides: "[A]n executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased and unless, before the expiration of such period, the process in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate." General Laws c. 197, § 9 (*c*), provides that the same statute of limitations applies to "an action by a creditor of the deceased" against "[a] trustee of a trust, the assets of which are subject as a matter of substantive law to being reached by creditors of the deceased . . . ."

person."[11] To receive judgment in its favor, such a creditor must demonstrate two things: (1) "that justice and equity require it"; and (2) "that such creditor is not chargeable with culpable neglect in not prosecuting his claim within" the one-year statute of limitations. G. L. c. 197, § 10. In other words, a creditor must show "both that justice and equity require recognition of a meritorious claim and that failure to bring the claim was not due to carelessness or lack of diligence." *Matter of the Estate of Grabowski*, 444 Mass. 715, 719 (2005) (*Grabowski*). Moreover, § 10 "is remedial in character, and '[i]ts operation is not limited to cases where the failure to sue seasonably was due to such fraud, accident or mistake as would be a ground for equitable relief if there were no statute.' " *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. 27, 32 (1980), quoting *McMahon* v. *Miller*, 192 Mass. 241, 242 (1906). See *Grabowski, supra,* citing *Hastoupis* v. *Gargas, supra* (relief under § 10 not limited to cases of fraud, accident, or mistake).

d. *Justice and equity.* "[A] creditor whose claim is barred by [§ 9] is not entitled to relief under [§ 10], unless he shows a claim of such substantial merit that equity and justice require that its validity should be recognized." *Downey* v. *Union Trust Co.*, 312 Mass. 405, 408 (1942). Justice and equity favor recognizing a creditor's time-barred claims where the claims are meritorious and the estate has not shown prejudice. *Grabowski, supra* at 720. A claim is meritorious where it has both legal and factual support, see *id.* at 719-720, and a court is unlikely to find prejudice where the estate was on notice of the creditor's claims within the one-year limitations period. See *id.* at 720; *Mullins* v. *Garthwait*, 875 F. Supp. 14, 21 n.10 (D. Mass. 1994).

Gates and Russell's time-barred claims are supported by evidence in the record. The claims are based essentially on alleged promises, made over more than three decades, on which

[11]General Laws c. 197, § 10, provides in part: "If the supreme judicial court, upon a bill in equity filed by a creditor whose claim has not been prosecuted within the time limited by section nine, deems that justice and equity require it and that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited, it may give him judgment for the amount of his claim against the estate of the deceased person, provided forthwith upon the filing of the bill a notice such as provided in section nine has been filed in the proper registry of probate . . . ."

Gates and Russell claim to have relied. Gates and Russell have submitted their own affidavits and corroborating deposition testimony from family members, friends, and others in support of their claims. They have also submitted an affidavit from an expert establishing that they were compensated at far below market rates during their employment by the school. We conclude that the time-barred claims are sufficiently grounded in law and fact to be deemed meritorious.

Moreover, the defendants have not shown that they were prejudiced by the filing of Gates and Russell's creditor claims in the Superior Court thirty-three days after the one-year statute of limitations expired. As described earlier, the defendants were on notice of the claims well within the one-year limitations period. See *Grabowski, supra* at 720 (no prejudice where estate was on notice of claim via letter from creditor's attorney within one year of decedent's death); *Mullins* v. *Garthwait, supra* (no prejudice where estate knew claim would be brought).

Further, the equitable claims (seeking relief both in the form of specific performance and restitution) remain pending in the Superior Court. Even if relief under § 10 were denied, the defendants would have to defend against those claims that are premised on the same underlying events, promises, and relationships as the dismissed claims. Finally, the school and Dooling's interest in the real estate at 44 Smith Street remain in the estate as a consequence of a preliminary injunction ordered by the Superior Court judge in the pending action. The defendants have thus failed to demonstrate the type and level of prejudice that might otherwise counsel against equitable relief. We conclude that justice and equity require us to recognize Gates and Russell's time-barred claims, and turn now to whether they are chargeable with culpable neglect.

e. *Culpable neglect.* To be entitled to relief under § 10, a creditor must establish that his failure to file suit within the one-year limitations period "was not due to his carelessness or to any lack of diligence for which he might properly be censured or blamed." *Downey* v. *Union Trust Co., supra* at 408-409, and cases cited.

We agree with the single justice that Gates and Russell are not themselves guilty of culpable neglect. The defendants do

not contend that Gates and Russell are chargeable with culpable neglect in their hiring of Straub & Lyons to represent them, or in their reliance on counsel's advice. See *id.* (creditor justified in relying on experienced attorney's advice, and thus not chargeable with culpable neglect); *Hastoupis* v. *Gargas, supra* at 32-33 (same). Rather, they argue that Gates and Russell are chargeable with culpable neglect because they "intentional[ly]" waited for the outcome or settlement of the will contest in the Probate and Family Court before filing suit in the Superior Court. See *Monaghan* v. *Monaghan,* 323 Mass. 96, 97-98 (1948) ("It is settled that one[] who insists upon staking all in prosecuting a pending proceeding to a final conclusion while knowing all the material facts which indicate that the short statute of limitations is running against him, and yet neglects to resort to another remedy available to him and sufficient to protect his rights, is not entitled to maintain a bill under [§ 10], in the event that the proceeding which he pursued terminated in a final decision unfavorable to him").[12]

The defendants point to statements made by former counsel, Melissa Tzanoudakis, that she "prepared a lawsuit to be filed in Superior Court in the event that the Probate matter was not settled, or the Probate Court judge did not rule in favor of the Objection to the Probate of the Will." The defendants argue that Gates and Russell offered no evidence that their attorney's decision to await the outcome of the Probate and Family Court proceedings was contrary to their instructions or not based on their informed decision. Notably, however, Tzanoudakis's affidavit states that "the failure to file the Superior Court action was not due to carelessness, or lack of diligence on the part of my clients. They relied upon my assurances that their interests were being protected and *did not knowingly disregard their rights.* . . . My clients should not be charged with culpable neglect where I assured them that we were doing everything that could be, and needed to be done, to fully assert their claims." (Emphasis added.)

The defendants do not offer any evidence to contradict Tzanoudakis's statements, nor did they offer evidence to show that

[12]The defendants claim that this principle affects Gates and Russell's "standing" to sue. The cases the defendants cite, however, make clear that the principle relates to the culpable neglect prong of G. L. c. 197, § 10.

Gates and Russell were negligent or careless, or lacked diligence. And Gates and Russell submitted affidavits to the effect that they did not know until after the limitations period had passed that their attorneys had not done what was necessary to protect their creditor claims in a timely fashion. We therefore conclude that Gates and Russell were not themselves guilty of culpable neglect in failing to file their creditor claims within the limitations period, and consider whether any culpable neglect on the part of Gates and Russell's attorneys can be attributed to them.

In *Grabowski*, our most recent decision under § 10, we allowed the untimely claim of a minor who suffered lead poisoning sustained in his home, which was owned by the decedent, to go forward, concluding that the child was not chargeable with culpable neglect for his mother's attorney's failure to file a claim against the estate within one year. *Grabowski, supra* at 716-717, 722. The child's mother engaged an attorney on the child's behalf, who sent a letter of demand concerning the child's damages from lead poisoning to the decedent's attorney within six months of the decedent's death. *Id.* at 716-717. Through counsel, the decedent's attorney responded by letter stating that she had petitioned to be appointed administratrix of the decedent's estate and that once she was appointed she would be willing to negotiate concerning the child's claim. *Id.* at 717. However, after being appointed, she refused to make a settlement offer and took the position that the claim was by then time barred by § 9. *Grabowski, supra* at 718. The child's attorney filed a claim against the estate, arguing that G. L. c. 260, § 7,[13] tolled the statute of limitations in § 9, because the petitioner was a minor, thereby allowing the petitioner to file a claim under G. L. c. 197, § 13.[14] *Grabowski, supra* at 718, 722. A Probate and Family Court judge granted the administratrix's motion to dismiss because the one-year statute of

[13]General Laws c. 260, § 7, provides for the tolling of statutes of limitations for minors, and reads: "If the person entitled thereto is a minor, or is incapacitated by reason of mental illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed."

[14]General Laws c. 197, § 13, provides in pertinent part: "A creditor of the deceased, whose right of action shall not accrue within one year after the date of death of the deceased, may present his claim to the probate court at any time before the estate is fully administered . . . ."

limitations had run. *Id.* at 718. The child filed a bill in equity under § 10. *Grabowski, supra.*

After concluding that justice and equity required us to recognize the child's claim, we concluded that any carelessness or lack of diligence by the child's attorney did not create culpable neglect on the part of the child, *id.* at 720-721, relying principally on *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. 27 (1980).

In *Hastoupis* v. *Gargas, supra* at 29-31, a decedent's will did not contain his oral promise to the creditor plaintiff to leave him one-half of his estate in return for performing certain services. On learning this, the creditor promptly consulted with an attorney, but the attorney failed to file a claim on his behalf until after the expiration of the one-year statute of limitations. *Id.* at 31. The court held that the creditor was not himself guilty of culpable neglect because he spoke limited English, had no formal education, and had engaged an experienced and respected attorney to represent him. *Id.* at 32-33, citing *Downey* v. *Union Trust Co.*, 312 Mass. 405, 408-409 (1942). The court further held that the attorney's conduct was not attributable to his client because the attorney "misunderstood or misinterpreted the salient provision of [§ 9]." *Hastoupis* v. *Gargas, supra* at 33. The court reached this conclusion by applying the following standard:

> "If the attorney's failure was 'due to inadvertence, misunderstanding, illness or some cause other than neglect or breach of duty,' . . . that misstep is not culpable under the statute, nor attributable to the creditor client. The statute thus leaves to the judge some leeway to pardon those errors which arise from a misunderstanding of the controlling law as distinguished from mere procrastination in callous disregard of professional responsibilities."

*Id.* at 33, quoting *Downey* v. *Union Trust Co., supra* at 409. The court noted that the attorney was aware of the short statute of limitations in § 9, that he always intended to file suit in a timely fashion, and that two recent amendments to § 9 "could explain his error." *Hastoupis* v. *Gargas, supra* at 33-34 & n.5 ("many a well intentioned lawyer has felt the pricks of the statute's brambles"). The *Hastoupis* court went on to conclude that the attorney "misunderstood or misinterpreted the time limitations in the statute and that his conduct was within the

range of ordinary excusable fallibility." *Id.* at 34. Consequently, where an attorney misunderstands or misinterprets the salient provisions of § 9, there is no culpable neglect, and the attorney's conduct is not attributable to the client creditor. See *Grabowski, supra* at 721 (discussing holding in *Hastoupis* v. *Gargas, supra*).

After discussing the *Hastoupis* case in *Grabowski*, we stated that "[a]gency principles (which might operate to make an attorney's neglect attributable to the client as principal) do not apply to [§ 10]." *Grabowski, supra,* citing *Hastoupis* v. *Gargas, supra* at 31. See *Haven* v. *Smith,* 250 Mass. 546, 549 (1925) (" 'culpable neglect' mean[s] the neglect which arises from the creditor's own carelessness in not seasonably enforcing his claim"). But see *Hastoupis* v. *Gargas, supra* at 33, and cases cited (" 'creditors' can be charged with the result of their lawyers' blameworthy conduct under § 10"). We went on to explain that the estate had misinformed the child's attorney about the status of the administratrix's appointment and lulled the child's attorney into believing that the administratrix would be willing to settle the claim when she was appointed. *Grabowski, supra.* We also deemed it "understandable" that the attorney would assume that G. L. c. 260, § 7, tolled the statute of limitations, thereby allowing the child to file a claim under G. L. c. 197, § 13, and concluded that, "[i]n these circumstances, it would be unjust to charge the petitioner with culpable neglect for the mother's attorney's failure to file a claim against the estate within one year." *Grabowski, supra* at 722.

We continue to adhere as a general matter to the proposition that agency principles do not strictly apply to equitable proceedings brought under § 10, where a creditor's attorney is responsible for missing the one-year statute of limitations, *Grabowski, supra* at 721; however, the attorney's conduct may be attributable to the client where the attorney exhibits a "disregard of professional responsibilities" as opposed to "a misunderstanding of the controlling law." *Hastoupis* v. *Gargas, supra* at 33. See *Mullins* v. *Garthwait,* 875 F. Supp. 14, 24 & n.21 (D. Mass. 1994), quoting *Hastoupis* v. *Gargas, supra* (discussing *Hastoupis* standard and concluding that court "can 'pardon' errors arising from 'misunderstandings of the controlling law' not amounting to 'mere

procrastination' or 'callous disregard of professional respons-
ibilities' ").

While Gates and Russell's attorneys may have been negligent
in failing to file suit against the estate within one year of Dool-
ing's death,[15] we conclude that their conduct was sufficiently
the product of a misunderstanding of the controlling law that it
ought not be attributed to Gates and Russell.

3. *Conclusion.* The order of the single justice reinstating the
claims dismissed by the Superior Court judge is affirmed.

*So ordered.*

---

[15]On January 31, 2007, Gates and Russell filed a legal malpractice action in
the Superior Court against Melissa Tzanoudakis; Neila J. Straub; Mark B. Ly-
ons; Straub & Lyons, LLP; Lyons & Tzanoudakis, LLP; and the Law Offices
of Neila J. Straub & Associates, LLC. As alleged in the complaint, these at-
torneys were handling Gates and Russell's claims against Dooling's estate
when they failed to comply with the one-year statute of limitations in § 9. At
the time of oral argument, the case was still pending.