Leibensperger, Edward P., J.
The JaneyTrust brings this action to assert a claim of legal malpractice against a deceased attorney, Stanley Charmoy. This action was commenced in the Supreme Judicial Court pursuant to G.L.c. 190B, §3-803, seeking equitable relief from the legal bar to commencing such an action against the estate of a deceased person more than one year after the person’s death. A single justice of the Supreme Judicial Court ordered “that the case be transferred to the Middlesex Superior Court for a determination whether the plaintiffs failure to file timely was due to culpable neglect, see G.L.c. 190B, §3-803, and for such further proceedings as may be required.” Accordingly, this court conducted a trial, without a jury, on March 7, 2014. The parties submitted ten exhibits and called two witnesses. What follows are my findings of fact as well as my conclusion that, under the circumstances presented, the plaintiff Trust sustained its burden to show that it may proceed with this legal malpractice action against the estate of Mr. Charmoy.
I. FINDINGS OF FACT
Stanley Charmoy, an attorney, died on July 12,2010. Prior to his death, Mr. Charmoy had served as legal counsel to Max and Jane Greenbaum, as well as the companies owned and operated by Mr. Greenbaum, for more than 30 years. Mr. Charmoy was also a trusted legal counselor advising the Greenbaums on all matters of business and personal affairs, including the drafting of the Greenbaums’ estate planning documents. Mr. Charmoy drafted the Janey Trust (“the Trust”) for the Greenbaums. Mrs. Greenbaum is the named trustee of the Trust but Mr. Greenbaum is responsible for the day :to day affairs of the Trust.
The Trust commenced this action in the Supreme Judicial Court on December 21,2012. On November 29, 2012, the Trust commenced an action for legal malpractice against the law firm Charmoy, Stolzberg & Holian, LLP in Middlesex Superior Court, Civil Action No. 2012-4695 (“the CSH action”). The claim asserted in the CSH action is essentially the identical claim for legal malpractice the Trust wishes to assert against Mr. Charmoy’s estate. If the Trust is allowed to proceed with its late claim against Mr. Charmoy’s estate, this action will proceed to trial consolidated with the CSH action.
A. Testimony of Witnesses
Max Greenbaum is a 94-year-old man who now resides in Florida. He is an experienced and sophisticated businessman. He testified cogently and credibly regarding the facts of this case. Because it is uncontested that he acted on behalf of the Trust, his testimony is binding upon the Trust as the plaintiff in this case.
The other witness at trial was Victoria Holian. Ms. Holian is a lawyer who was married to Mr. Charmoy and is now the defendant executrix of his estate. At the time of the transaction at issue, Ms. Holian was a partner of CSH. After Mr. Charmoy’s death, CSH dissolved. I find that Ms. Holian’s testimony was, in general, *179 credible, although she had essentially no knowledge of the facts surrounding the transaction at issue.
Accordingly, the facts relevant to determining the c. 190B issue are, in large part, undisputed. The following is a chronological description of those facts, supplemented by reasonable inferences where appropriate.
B. The Loan
From time to time in the ten years prior to his death, Mr. Charmoy presented to Mr. Greenbaum the opportunity for the Trust to make secured loans to Mr. Charmoy’s clients. Over the years, the Trust made eight to nine such loans. In those transactions, Mr. Greenbaum accepted Mr. Charmoy’s representations about the borrower and the terms of the loans without communicating directly -with the borrowers. Mr. Greenbaum was concerned only that the loans be adequately secured by collateral. Mr. Charmoy took responsibility for assuring that there was adequate collateral. Mr. Greenbaum also had an understanding with Mr. Charmoy that such loans would be for business, not personal, use by the borrowers. Mr. Charmoy prepared all of the documentation for the loans and handled the closing.
In January 2008, Mr. Charmoy presented to Mr. Greenbaum the opportunity to loan $125,000 to Alexandras Pisalidis, a client of Mr. Charmoy’s. Based on what Mr. Charmoy told Mr. Greenbaum, Mr. Greenbaum approved the loan. Mr. Greenbaum had no communications with Pisiladis in advance of the loan. The named borrowers were “Alexandras Pisiladis, individually and as Trustee of the Giotis Trust (referred to herein as “Pisiladis”). According to the terms of the promissory note drafted by Mr. Charmoy, the proceeds of the loan were not to be used for ’’personal, family, or household purposes." Pisiladis was obligated to pay interest, only, on a monthly basis beginning February 25, 2008, with the entire outstanding principal to be paid in full on January 5, 2013. The loan was secured by a mortgage on Pisiladis’ residence and a mortgage on a three-family house and a commercial building in Dedham, Massachusetts. The loan was closed by Mr. Charmoy on or about January 25, 2008.
By letter dated February 1, 2008, Mr. Charmoy sent to Mr. and Mrs. Greenbaum at their address in Florida certain documents from the closing. Mr. Greenbaum does not deny he received the letter and the documents but testifies that he did not review the documents upon receipt. The letter, Exhibit 3, was produced by Ms. Holian in response to this claim. She found the letter on the computer containing CSH documents. She cannot testify whether the letter she produced was the final draft or whether it was actually sent. The copy, Exhibit 3, is unsigned. In any event, the letter purports to show that the Greenbaums were sent a number of documents including a “Settlement Statement” and “a copy of the checks spent.” Exhibit 8 is a check dated January 31,2008 to “Marie Hodgdon a/k/a Maria Theodorou” in the amount of $90,850, with the notation “Pisiladis.” The Settlement Statement offered by the parties is Exhibit IE. It shows a disbursement from the Pisiladis loan to “Marie Hodgdon a/k/a Maria Theodurou” in the amount of $89,500. Mr. Greenbaum does not deny that he received a copy of the $90,850 check and the Settlement Statement in February 2008. I find, based upon Mr. Greenbaum’s testimony, that he received the documents but did not examine the documents when received in 2008.
While Mr. Charmoy was alive, Pisiladis made interest payments directly to Mr. Charmoy who, in turn, delivered the payments to the Trust. In April 2009, at the request of Mr. Charmoy, the Trust agreed, through Mr. Greenbaum, to increase the Pisiladis loan to $151,500. A promissory note modification was prepared by Mr. Charmoy. Defendant introduced an unsigned copy of a letter dated April 21, 2009 (Exhibit 4) from Mr. Charmoy’s office, purporting to send to Mr. Greenbaum “the documents regarding the loan from the Janey Trust to Alexandras Pisiladis along with a check for late and prepaid interest.” At trial, there was no testimony describing or confirming what specific documents were included with this letter. There was no testimony providing an explanation with respect to “late and prepaid interest” nor was there a copy of the check referenced in the letter.
In January 2010, Pisiladis repaid the principal amount of $25,849.28, reducing the outstanding loan to approximately where it was before the April 2009 modification. At that time, the mortgage on the residence of Pisiladis was released, leaving the Trust as mortgagee on the Dedham property.
C. Events After the Death of Mr. Charmoy
Within a few months after the death of Mr. Charmoy, CSH began to dissolve. Ms. Holian personally delivered approximately six boxes of original files pertaining to the Greenbaums’ affairs to the Greenbaums’ home. She did not retain copies.
At that time, Mr. Greenbaum contacted Pisiladis. Mr. Greenbaum informed Pisiladis that interest payments on the loan should now be sent directly to Mr. Greenbaum. A reasonable inference is drawn that Mr. Greenbaum reviewed the CSH file on the Pisiladis loan when he received the files from CSH so he could determine how to make contact with Pisiladis. Mr. Greenbaum testified that he had no concerns about the Pisiladis loan as Pisiladis continued to make timely payments of interest on the loan. Mr. Greenbaum did not take notice from the file of the check or Settlement Statement indicating proceeds of the loan had been paid to Hodgdon a/k/a Theodorou.
In September 2011, Pisilidis failed to make an interest payment. Mr. Greenbaum contacted Pisilidis and talked to him several times. Pisalidis told Mr. Greenbaum that he was negotiating with Rockland Trust to work out his debt situation. Pisalidis gave Mr. *180 Greenbaum assurances that the loan would be repaid. In one of these conversations within a few months after September 2011, Mr. Greenbaum learned from Pisiladis that proceeds from the loan had been used to pay a woman to settle a claim arising from an auto accident. Mr. Greenbaum became suspicious of Pisilidis at that time. He thought Pisilidis was lying. Mr. Greenbaum also began to doubt that the collateral would cover the loan. Mr. Greenbaum was concerned about whether the Trust would be repaid.
On May 12, 2012, Pisilidis filed for bankruptcy. According to bankruptcy papers (Exhibit 6), Rockland Trust held, in 2005 and 2006, two mortgages on the property in Dedham mortgaged to the Trust in 2008 to secure the Trust’s loan. There is no evidence that Mr. Charmoy disclosed to Mr. Greenbaum that the Trust’s mortgage on the Dedham property would stand behind the mortgages held by Rockland Trust. While the evidence is less than precise, it appears that the Trust suffered a loss as a result of the Pisiladis bankruptcy and the inadequacy of the collateral securing the loan from the Trust.
In July 2012, Mr. Greenbaum went to the offices of the lawyers who previously worked at CSH. At that time, the lawyers were working at a firm called Tamkin & Hochberg. The lawyers from CSH working at the firm included Ms. Holian and Rebecca MacGregor. Mr. Greenbaum had a conversation with Ms. MacGregor about the Pisalidis loan. Admitted to show Mr. Greenbaum’s knowledge and state of mind, Mr. Greenbaum testified that Ms. MacGregor told him that she had overheard Mr. Charmoy and Pisalidis discuss the loan from the Trust at the time it was made in 2008. She heard that the proceeds of the loan would be used to pay off a woman for some previous indiscretion of Pisiladis.
In August 2012, Mr. Greenbaum, through counsel, notified Ms. Holian by letter that he intended to assert a claim against Mr. Charmoy and CSH. On September 4, 2012, Ms. Holian, as executrix of the estate of Mr. Charmoy, informed Mr. Greenbaum’s counsel in writing that the claim was untimely. At trial, Ms. Holian testified that as executrix of the estate, she did not receive notice of the Trust’s claim until receipt of the August 2012 letter from counsel for the Trust. In addition, Ms. Holian claimed that the estate would be prejudiced if the claim is allowed to proceed because CSH has dissolved and there is limited access to its computer files. Also, she contended that there is less access to potential witnesses for CSH and the estate. In particular, an assistant to Mr. Charmoy died in 2013. Also the estate must pay an annual account fee to the Probate Court because the estate must now remain open.
This action was commenced on December 21,2012.
II. CONCLUSIONS OF LAW
General Laws c. 190B, §3-803 provides that an action against a deceased person must be commenced within one year of the date of death of the deceased. Section 3-803(e) gives, however, a possible exception to that legal bar:
If the supreme judicial court, upon a complaint in equity filed by a creditor whose claim has not been prosecuted within the time limited by subsections (a) or (b), deems that justice and equity require it and that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited, it may give him judgment. . .
This section replaced, on March 31, 2012, G.L.c. 197, §10. See GMAC Mortgage, LLC v. First Am. Title Ins. Co., 464 Mass. 733, 736 (2013). The previous statute, G.L.c. 197, §10, contained identical language for the test of when a late claim might be allowed — "that justice and equity require it and that such creditor is not chargeable with culpable neglect." Gates v. Reilly, 453 Mass. 460, 467 n.11 (2009). Thus, cases decided under the previous statute provide direct precedent for the standards to be applied.
The burden is on the creditor /claimant to show both that justice and equity require recognition of a meritorious claim and that failure to bring the claim was not due to carelessness or lack of diligence. Id. at 467, citing Matter of the Estate of Grabowski, 444 Mass. 715, 719 (2005). “Moreover, §10 ‘is remedial in character,’ and ‘[fits operation is not limited to cases where the failure to sue seasonably was due to such fraud, accident or mistake as would be ground for equitable relief if there were no statute.’ ” Gates, 453 Mass. at 467, quoting Hastoupis v. Gargas, 9 Mass.App.Ct. 27, 32 (1980), quoting McMahon v. MiEer, 192 Mass. 241, 242 (1906).
A. Justice and Equity
For this prong of the test under §3-803(e), the Trust must show that its claims have “substantial merit.” Gates, 453 Mass. at 467. “Justice and equity favor recognizing a creditor’s time-barred claims where the claims are meritorious and the estate has not shown prejudice.” Id. The Trust easily satisfies this test.
The analysis of the claim starts with the recognition that Mr. Charmoy, as a trusted legal advisor, owed a fiduciary duty to the Trust. Hendrickson v. Sears, 365 Mass. 85, 90 (1974) (‘The relation of attorney and client is highly fiduciary in nature. The attorney owes his client a duly of full and fair disclosure of facts material to the client’s interests” (citation omitted)). There is substantial evidence to support a conclusion that Mr. Greenbaum relied upon Mr. Charmoy to handle all aspects of the loan and to ensure both that the collateral was adequate and the loan proceeds were used for business purposes. Indeed, it was the promissory note drafted by Mr. Charmoy that required the loan proceeds not to be used for personal or family purposes. There is also evidence to suggest that the bulk of the loan proceeds were used not for business purposes but instead to pay a woman who had a claim against Pisiladis. Mr. Charmoy was aware of this unauthorized use of the proceeds because his office prepared the Settlement Statement and check showing the payment to the woman. Thus, there is substan *181 tial merit to the claim that Mr. Charmoy failed to perform his duty as legal counsel to the Trust.
Finally, as a fiduciary, Mr. Charmoy had an obligation fully to disclose to his client, the Trust, the facts of the transaction. “Where a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment for purposes of applying §12 [of G.L.c. 260] . . . Such a plaintiff need only show that the facts on which the cause of action is based were not disclosed to him by the fiduciary.” Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 519 (1997). Merely sending the client the documents relating to the closing of the loan with no explanation as to the reason for the payment from the loan proceeds to Maria Hodgdon, and no description of the mortgages received by the Trust, fails to satisfy that duly of disclosure. This failure contributes to the conclusion that a meritorious claim exists[1] and also is relevant to the analysis of culpable neglect as addressed in the next section.
The arguments by Ms. Holian for unfair prejudice to the estate as a result of the late filing are unpersuasive. While it is true that the estate had no notice of the claim until 2012, the evidence of any specific prejudice is lacking. Ms. Holian points to no specific document that cannot be found. In fact, she offered documents at trial that she was able to retrieve from CSH computers. Ms. Holian offers no evidence as to what witnesses, other than Mr. Charmoy’s assistant, are now unavailable or what such witnesses might know. With respect to the death in 2013 of Mr. Charmoy’s assistant, Ms. Holian fails to describe any information that the assistant might have had concerning the transaction or Mr. Greenbaum’s knowledge of the transaction. Finally, the fact that the estate must pay a fee for keeping the estate open is clearly outweighed by the justice and equity of allowing the Trust’s claim to proceed.
B. No Culpable Neglect
To satisfy this prong of the test under §3-803(e), “a creditor must establish that his failure to file suit within the one-year limitations period ‘was not due to his carelessness or to any lack of diligence for which he might properly be censured or blamed.’ ” Gates, 453 Mass. at 468, citing Downey v. Union Trust Co., 312 Mass. 405, 408-09 (1942). Mr. Greenbaum testified that he had no reason to suspect any possible loss on the Pisiladis loan or improper use of the loan proceeds until after Pisilidis defaulted in September 2011. As described below, based upon that testimony which I accept as true, the Trust may not be charged with culpable neglect for failure to assert a claim against the estate within one year from Mr. Charmoy’s death on July 12, 2010.
The argument by Ms. Holian as executrix is that Mr. Greenbaum should have reviewed the loan documents at the time of the loan in 2008. If he had, the argument goes, he would have seen the disbursement to Marie Hodgdon and then would have questioned Mr. Charmoy as to the identity of Hodgdon and whether the loan proceeds were being used for business purposes. Mr. Greenbaum also could have inquired about the collateral for the loans and learned whether the mortgages received by the Trust were first in line and adequate to secure the note. The same is true, Ms. Holian contends, for the opportunity for Mr. Greenbaum to learn of his potential claim when the Pisiladis loan was modified in April 2009.
The problem with Ms. Holian’s contentions is that they ignore the fiduciary duty owed to the Trust by Mr. Charmoy. Mr. Greenbaum and the Trust are not culpable for relying upon Mr. Charmoy fully to disclose the terms of the transaction and the known uses of the loan proceeds. See Demoulas, 424 Mass, at 519. Mr. Greenbaum did not have actual knowledge of facts that could give rise to a claim against Mr. Charmoy until the months following September 2011. The failure of Mr. Charmoy to disclose the pertinent facts may be viewed as a “fraud or imposition” upon a creditor like the Trust that takes the Trust’s late filing out of the realm of culpable neglect. Waltham Bank v. Wright, 90 Mass. 121, 122 (1864). Consequently, the Trust is not chargeable with culpable neglect and this action should proceed under G.L.c. 190B, §3-803(e).
The last argument by Ms. Holian is based on the fact that the Trust delayed filing this action by as much as 14 months from the date (September 2011) when Mr. Greenbaum concedes that he was suspicious regarding the terms of the loan and had suffered a loss by Pisiladis’ failure to pay interest owed. Ms. Holian argues that that delay shows culpable neglect that can be projected back to the one-year period following Mr. Charmoy’s death. I disagree. The statute is satisfied so long as there is no culpable neglect by the creditor “in not prosecuting his claim within the time so limited, [the one-year from death].” G.L.c. 190B, §3-803(e) (emphasis added). As described above, I find there was no culpable neglect within the one year after Mr. Charmoy’s death. Additional delay after one year from death in filing for equitable relief under §3-803(e) is not considered in the §3-803(e) inquiry. Gates, 453 Mass, at 464 (noting that the bill in equity was not filed until fifteen months after plaintiff knew of missing the one-year bar of the predecessor statute, but not considering that delay as relevant to the culpable neglect analysis under the statute).
III. ORDER
The Trust may proceed with its claim against the estate of Mr. Charmoy pursuant to G.L.c. 190B, §3-803. Accordingly, this action shall be consolidated with the CSH action, Middlesex Superior Court No. 2012-4695, for all purposes including trial.

Defendant does not argue that the Trust’s claim, if allowed to proceed, would be barred by the three-year statute of limitations for tort actions contained in G.L.c. 260, Sec. 4. It would appear that the discovery rule, especially as applies to a fiduciary, would allow the claim to proceed.